Good morning. James Thompson, on behalf of Mr. Bellhouse, I wanted to address two arguments. Oh, excuse me. May I preserve five minutes for rebuttal? I'll try to help you with that. I'll keep my eye out. Okay. The two arguments I really want to address are the Uncharged Act evidence and the jury instructions concerning those Uncharged Acts. Mr. Bellhouse was charged with and tried with five counts, and there were perhaps 10-plus Uncharged Acts introduced in the case. So the Uncharged Acts turned a trial of five counts with two victims into a trial of five and at least 10 unadjudicated acts with three victims and additional two witnesses or three witnesses. The Uncharged Acts outnumbered the counts also by twice as much. Christina's testimony, which was the primary Uncharged Acts case, makes clear that the testimony was both unfairly inflammatory and prejudicial. Rather than summarize the testimony, which is in the brief and is rather graphic, the cites to four excerpts of record 381, 414, and 415 detail her testimony. And her testimony was probably the most salacious of all of the testimony and the acts were probably the most, on a scale of any of these, the most offensive as they were tried and as they were brought before the jury. Christina? Christina, yes. But the acts were not charged in a count, so the benefit of the presumption of innocence, beyond the reasonable doubt standard, didn't really apply to her case. Her case was probably charged as an Uncharged Act because it was not disclosed until well past the, or a few days past the deadline for even noticing Uncharged Acts. The deadline was May 15th and the Uncharged Acts of Christina and Maribela weren't noticed until four days after that deadline or 11 days before the time period expired. So counsel, I mean, I don't want to make you go through the details of what the acts were, but it was not clear to me from the record that the conduct with Christina was significantly different in kind from the conduct with Anna and Genesis that was the counts charged. Those acts were the counts charged in the indictment and those involved sexual contact with both of those victims. So let me ask it this way. The standard here is abuse of discretion, is it not? Yes. Yeah, okay. So why would it, why was it an abuse of discretion for the district court to not view it the way you are describing and to think that these weren't really significantly more inflammatory than the charged conduct? I think there are two things. It's one, the number of the acts, the Uncharged Acts. And two, it's the additional victims that were mounted up with respect to the Uncharged Acts. Three, it was the fact that there were additional witnesses testifying as to the Uncharged Acts. And then lastly is really Christina's testimony, which is... Oh, I'm sorry. What's your best case to support that assertion? The best case for why it shouldn't have been introduced? Yes. Because of the, you know, inflammatory nature of it and the over... Do you have an actual case? I mean, in your brief, you cite LaVictor. Right. And I think, you know, Porter makes clear that, you know, because this evidence can be introduced, doesn't mean it must be introduced. No, I understand that. But if you look at LaVictor, that's the case I thought that you cited in your briefs. I don't know that that helps you because they allowed those Uncharged Acts to come in, in that case, and they were equally egregious, if not more than what was being presented as a charged act during the trial. We did cite LaVictoria in the case. And I think we distinguished it in the briefing to show that these acts in particular, because of the number of them, I mean, I can go through the Uncharged Acts. There's, you know, additional touching of breasts in the vagina. There's, you know, there's a pressing against the body, but it's really Christina's acts that... And she's the primary Uncharged Act count, if you will, in her case. And her stuff, you know, with respect to the taco salad, the inserting of his fingers, and then, you know, the licking of the fingers afterwards and stuff, it really was much more than the others. I guess your view is that's more than one of the others in the charged act having to perform oral sex. Yes. And only because... I'm trying to draw the distinction in terms of the egregiousness. I understand. I think that if you were a jury and you're sitting there and you're trying this case and you see these charged acts and you see two counts of oral sex, right? They're there. And you make your decision beyond a reasonable doubt whether those are true. As to the acts that involve Christina, which I do think are more towards the prejudicial end because of the nature of them and because there is no reasonable doubt benefit as to those. They just came in. There wasn't a determination that the jury had to make as to those. But the district court had to make a determination, 403 determination, whether it was probative versus the prejudicial nature of it. And the district court made that finding. Yes, the district court did. There's no doubt about it. But again, Porter makes clear that just because it is admissible, it's not mandatory. And the court also found that there was not a timeliness bar of the introduction of Christine, the acts against Christina, because of the fact that the government notified defense counsel promptly upon learning of it and that. So the lateness of the notification, as you identified, it was four days. The district court had to make a decision whether to allow it. We have to determine whether there was an discretion of that decision. What? Did you ask for a continuance? I'm trying to figure out what the lateness, what your what your argument is directed, because it didn't look, at least from my review, that the trial counsel, and I don't know if that was you, was that you? No, it was not me. Okay. Trial counsel did not ask for extra days or a week or four more days to look into this because that was going to be the time, the deadline that had passed. So I'm trying to figure out what is the argument that you're making regarding the lateness of the disclosure? Well, the statute is clear that if it's noticed late, it shouldn't come in unless good cause is shown. Exactly. So what's the good cause? Not the fact that it was promptly given to defense counsel or defense counsel were promptly notified and not that it was, you know, similar acts and stuff. What is, why wasn't it noticed earlier? Why didn't the government interview Christina and Maribel prior to the May 5th deadline? It was only because they waited afterward that they interviewed them that they then learned of that evidence. Why didn't the government ask the questions that should have been asked, that were asked ultimately, why didn't the government ask those questions at the initial interview of Christina and the initial interview of Maribel? And the failure to analyze it in that framework is what is the abuse of discretion. It's not that the court didn't go through, the court went through all of the steps that were required in terms of, you know, whether it's admissible or not. It's the call on whether or not it should have been admitted. And going back to this, the other angle of why the evidence could have been admitted was that they were inextricably intertwined with the other acts. But entwinement doesn't mean it's admissible. The question is, is whether or not the counts one through five told the complete story of the events that occurred. And they did. The government's own admission was there already is significant corroborating evidence of the charged offenses to ER 127. There was a story in counts one through five. Nothing was needed to be added to it. Christina's acts demonstrated, didn't add to the story of counts one through five in the sense that it completed that story. What it did was add even more salacious acts that caused there to be a complete, okay, you've got 10 acts, you've got five counts. It's got to all lean towards conviction. But, I mean, isn't that what Rule 413 allows to a degree? I mean, I wouldn't include the salacious part in there, but Rule 413 allows, I mean, is an exception to the rule that you can't have propensity evidence. And like the inference that Rule 413 allows the jury to make is, you know, because this person engaged in like the sort of, you know, sexual misconduct on other occasions, like, you know, we can draw the inference that he engaged in it on the charged occasions, right? I mean, that's the whole point of the rule, isn't it? Yes. Rule 413 allows for it. The question is whether or not it should be admitted. And here it's just was too much. Well, the district court, I guess, made a determination because the defense was challenging the credibility of the charged conduct. Is that not correct? I believe I'm answering your question. It seemed like that was the main defense was that these women were not telling the truth. Yes, that's correct. Okay. And so the district court made a determination whether the probative value of these uncharged acts outweighed the prejudicial effect. And we have to determine whether that district court abused his discretion in light of 403, in light of 413, correct? That's correct. Okay. All right. You have three minutes left. Do you want to- I don't argue with that at all. I understand completely what the court's saying, but the problem is, is that there was just, Christina was just too much and it was given late. And whether they had asked for a contingency, whether a four-day contingency wasn't going to do any good, they would have to go out and get all sorts of information. The question is whether it was just too much because it turned a trial of five counts into a trial of essentially 15 counts. And that was just too much when the government story was complete. I mean, it can be allowed to add something if there's something missing, right? If the story's not complete on counts one through five, it didn't add in that sense. It didn't dovetail into it. It just added additional charges. From what I can recall from your briefing, I don't see a case that helps you with that. But if you want to come back and highlight one in particular. I did the best I could with the cases that are out there. I looked hard and I look low and hard. Thank you. Just one thing. Go ahead. Where was the issue of lateness preserved in the district court? There was argument on it. There was motions on it. I just read the motion in limine. I didn't see any reference to lateness. I can find 2ER104 is where the court found good cause because the government did not learn of the evidence. I don't have the site. I can look for them. I don't have the sites to the defense argument, but they had it. And then I'll save a minute. The jury instructions are really important here because the jury instructions were not given to Anna, Genesis, Tisha, or Annabelle. But the jury instruction was given to Christina and Maribel. Those are the only two. They were given at the end of the case, but they only referenced Christina. They didn't reference the other people. The court was very clear that I can let this stuff in as long as adequate instruction is provided. True enough, but it wasn't. But there was a general instruction, wasn't there, that the jury was only to evaluate whether he was guilty of the charges in the indictment and not to assess his guilt for other acts. Wasn't there that instruction? Yes, at the end, but it was referenced particular to Christina, but it was the other person's testimony that also, because Anna gave that charge. The instruction I just referred to didn't mention any particular witness. The court gave a model instruction regarding the uncharged acts at the end of the case. Okay. And the court instructed the defendant is not on trial for any other conduct or offense, not charged in the indictment. But there is a particular reference to Christina at the end of the case that that instruction is given. The government argues only about Christina, doesn't argue about the other individuals. So. Thank you. I'll reserve one second if I can.  Good morning, Your Honors. May it please the court. Kelly Volkar on behalf of the United States. This court should affirm, particularly given the deferential standard of review here, but I would like to start off immediately with clarifying something from my friend across the aisle's argument, which is when it comes to Christina's testimony, there are multiple acts that she talked about. She is the uncharged victim. The government does not contest that. There is the sexual act of Mr. Bellhouse inserting his fingers into her that had been disclosed months prior to trial. The disclosure that occurred a couple of weeks before trial related to sex, abusive sexual contact, additional events that only came to light during interviews as the government was reinterviewing these witnesses who were already on the witness list in advance of trial. And that was the reaching through the window and groping Christina's breasts in exchange for the cleaning supplies. So the late disclosure was much more limited than what my counsel across the aisle, what my colleague across the aisle indicated. And that is in the record at 2 ER 116 to 117. And Judge Thomas, to answer your question, the district court did rule on the lateness and found there was good cause at 2 ER 104. No, I understand that. I was just I was wondering whether the defense made a motion based on that. Your Honor, I believe it was discussed orally, but thank you. Yes. So I also want to go back to questions that the court had for my colleague relating to Christina's acts vis-a-vis the other charged conduct. And I agree with your honors that they were very similar in kind. The act against Christina, the one that had been disclosed months before, was similar in kind and nature to the acts against Anna, who was the charged victim in count one and similar. And the additionally identified acts, the sex abuse of sexual conduct were similar in kind to the charged acts against. Well, it's my understanding under 404 B for prior uncharged conduct committed had to be extremely similar. And there are two different acts here. I know the defense counsel at the time didn't make that motion and isn't really arguing that now. I think it's arguing more than it was egregious. But but I think there is case law that says it has to be very similar based on the act. What's the case that you have there that you can present to tell us why this was similar enough? Well, your honor, I think the best case for the government is Porter in which came out just a couple of years ago, USB Porter. And in that case, that was the person who attempted to anally rape a colleague in Yosemite. And this court found that the testimony of a prior ex-girlfriend who had also within approximately the last year or so had also been anally raped by the defendant was a similar act. It was this is two different acts. And that's why I was trying to find a case. I didn't find it. Again, I'm not sure that that argument has been preserved, but you just said this was similar. I understand when you pull out the lens here that it's all sexual misconduct. But I just was curious if you had a case on the 404 B and it being substantially similar in terms of the act. Thank you, your honor. I don't know. I don't know if I have a case to that level of granularity, but I would argue that I don't believe that that level of granularity is required by either 404 B or 413. And what I mean by that, your honor, is it is a five factor balancing test under LeMay of whether or not the acts can come in. And one thing that I do think is important is even if it wasn't the same sexual act, oral sex versus him inserting his fingers in her vagina, it would have been charged under the same statute at the time. So if the charge against Christina had been brought by the government, it would have been the same sexual act that was charged. It would have been the exact same charge that was against Anna or that was brought with respect to Anna in counts one and counts two. It's only subsequently that Congress has added, for example, an aggravated sexual assault against a ward. That statute wasn't available to the prosecution at that time. No, I know that I was just focusing on the act and I thought the case law was that it had had to be pretty much identical. Your honor, I do not read the case law that way. I do believe that under LeMay, for example, although that related to a child molestation, there had been the similar oral copulation, but there was also evidence that he, the defendant, may have vaguely penetrated the younger child in the prior 414 evidence. And that was still allowed to come in because, again, it went to the defendant's propensity to commit these types of crimes. And the government's position would be that that's the same here with respect to Christina, which is in this case. And your honor, Judge McGee mentioned this to my colleague. These are the types of cases where credibility is on the line. Credibility was the entirety of the defense. These women cannot be believed because they are inmates. These women cannot be believed because they're just seeking immigration benefits or they're just seeking civil suits and damages. And because that was the entire thrust of the defense, this is exactly the type of case where Rule 413 evidence, Congress has made the judgment that Rule 413 evidence is critical. And so even though it wasn't exactly the same sex act, I think the part where it was within the same year, it was similar in kind. He followed very similar patterns as he had done with Genesis, for example, to both Genesis and Christina. Bell House had said things like, I want to set you on a desk and spread your legs and see what you taste like. For both Anna, Genesis, and Christina, there were multiple sexual innuendos and comments made both to the victims and also in front of other inmates. He bragged about receiving oral sex from other inmates to inmates that he intended to victimize. This was all part of his pattern and practice. And this is the government's inextricably intertwined argument for particularly the charged victims. This was all part of his pattern and practice to groom these women, to desensitize them to his sexual advances in order to take advantage of them. And I do put Christina in that same pattern, Your Honor. So even though the sexual act itself was different, the way that he went about desensitizing her, grooming her, exchanging contraband, in her case cleaning supplies, in order to try to get sexual favors from her, I would say that that is indistinguishable from the charged victims. And that's where, and I don't think that it was an abuse of discretion for Judge Gonzalez-Rogers to find that they were similar in nature, close in time, all within approximately a year of each other, and under the LeMay factors sufficiently credible to present, to allow the government to present it to the jury. Can you address the issue of the limiting instruction? So there's the limiting instruction specifically directed to Christina, but then you also have uncharged acts involving Hannah and Genesis, and there isn't a limiting instruction specifically mentioning them. Why was that? Thank you, Your Honor, for the opportunity to address that. I think that the most intellectually honest way to address the uncharged acts as they relate to Hannah and Genesis is that they were really inextricably intertwined with the charged acts. The court below found many of the other acts in the form of providing them contraband or making statements to them, sexually inappropriate statements to them, all of that the court found was inextricably intertwined. And then when it talked about 413, it really shifted its analysis to Christina. However, if the court finds that it was properly admissible as inextricably intertwined, it didn't need an extra limiting instruction. It could have also been, and the government proffered it also as 404B, intent, lack of mistake, MO. And in that instance, as Your Honor pointed out, the judge gave the model 2.10 instruction that relates to typical 404B evidence at the end of the trial to catch all uncharged conduct besides what's in the indictment. And then there was the specific limiting instruction towards Christina, who if she was a 413 witness, then that would be appropriate under this court's ruling in Porter. What's your best case for that sufficient, for what you just said is sufficient? Your Honor, there is no case that lays out what I just said in terms of— Your best case. I know you don't have probably something. Thank you, Your Honor.  I believe that my best case for the inextricably intertwined is the Williams from the 1993, in the sense of just the part where the government could have charged more and the defendant is not on the hook for all of his bad actions, doesn't necessarily take it out of the realm of admissible if it's meant to provide the government with the opportunity to tell a comprehensive story. There's also, although it is unpublished, Your Honor, the Boehm decision from just a couple of years ago. There's, of course, the published part, but the unpublished part also talks about 404B, and that was the filming of child pornography with a hidden camera. And then subsequently, the defendant did rape his stepdaughter, and that was admitted as 404B evidence. And this court found that was permissible. Thank you, Your Honor. Going back to the jury instructions for Judge Miller, the government agrees that there was no instruction that was given at the time that Anna and Genesis were testifying. The district court did not interrupt as they were going through to provide a limiting instruction when uncharged versus charged acts were being described. But the reason why I believe that's not an abuse of discretion is because this entire trial, it was incredibly clear to the jurors at every moment what the charged acts were. The judge listed them in the preliminary instructions, said counts one and counts two were when Bell House had Anna perform oral sex. Count three is when he touched her vagina and breasts. Count four, that level of detail in the preliminary instructions before the jury heard any testimony, the government reiterated an opening statement, what each of the counts were, walked through them, who was the victim, what was the alleged conduct. And then when it came to the closing arguments, the government was equally as clear, always setting Christina aside, but also always describing which act they alleged was the charged count. The district court reiterated in its closing argument, or sorry, in its closing argument, in its jury instructions at the close of the case at 2 ER 239, it once again walked through each of the counts that were charged. When the jury provided a note that asked about count four and could it be anything other than the touching of Genesis's buttocks for count four, that was at the SCR 16. The district court said, no, refer back to the jury instructions. It may only be the touching of Genesis's buttocks. This is not a case where the court has to be concerned that the defendant was convicted on uncharged conduct. This is a case where at all points in time, the district court was incredibly clear what was charged and what was not, gave multiple different instructions that this court has affirmed over and over again are sufficiently protective. And then when the jury came back and did ask a clarifying question, again, was pointed towards the specific charges that they had defined. Ideally, though, the district judge should have given a limiting instruction each time a witness testified regarding an uncharged act, even if it's general, right at the end or at the beginning. Your Honor, I disagree. And I also think it would be impractical and in work, in practice, in the district court before each one of these women speaking, they'd have to, in a case, in cases where it is already difficult to remember the specifics enough to get an area and a place and a time and a date to interrupt at the flow of testimony each time they're going to talk about an instance. And for example, with Anna and Genesis or Anna in particular, multiple witnesses said that it was near daily that they were kissing and hugging and he was pulling her into his lap. And so I guess it's hard for me to picture how, in practice, district courts could interrupt testimony at each point and give a general instruction to the effect of whether or not it's uncharged conduct. But I think, I mean, he doesn't put it in quite these terms, but maybe the suggestion on the other side is that when you do give that instruction with respect to one of the people talking about uncharged acts, but not to the others, I mean, I don't know whether jurors in the Northern District of California are familiar with maxim expressio unius exclusio alterius, but maybe they are. And so maybe the inference that the jury has is like, well, you told us not to consider it with this one, but therefore we can with the others. Should we be worried about that? Your Honor, I would say that would run counter to the Solomon case cited in the government's brief, which says that the court anticipates that jurors follow the instructions, and specifically that case relates to the general 210 instruction about activities not charged for 404B evidence, that giving that general instruction at the end of the trial is typically sufficient to presume that the jurors follow it and only convict on the charged conduct. And again, I think that that would also, the government's perspective is that the jury note runs counter to that as well, because to the extent that they were thinking that, they asked the question to clarify, and the court was very clear that they could only convict on the charged conduct, and even the verdict form itself listed that count one, two, and three related to Anna, and counts four and five related to Genesis. If there are no further... There were a lot of uncharged acts referred to, correct? More than the charged. I do believe it's how it's characterized, Your Honor. It depends, because for Anna, for example, there were the two, and I know I'm over time, so I'll try to be quick. For Anna, for example, there were the two instances of oral sex, and there was the multiple instances of groping her breast and vagina, only one of which were charged. There was the kissing, hugging, and the pulling into the lap, but I would argue that's part of the grooming and desensitization. It would be hard to parse those out to charge every single one of those instances, and then for Genesis, I would say that there were more uncharged acts, such as her leaning over and him pushing his groin into her, but there were also... I guess, Your Honor, I would just say that the uncharged acts didn't so overcome the trial, when it was all really part and parcel of how he kept them under his power and control in order to get the sexual interactions that he wanted. If the court has further questions, thank you for the allowance of extra time. Thank you. Please affirm. May I have 30 seconds? I'll give you one minute. With respect to the concluding instruction that we're talking about, I have down at 3 ER 239, the court instructed at the end of the case, as previously explained, you heard evidence that the defendant may have committed a similar offense of sexual assault against Christina. So, I do think at the end of the case, the only person that is named is Christina. The other folks are not named. The other individuals are not named. So, counsel, your essential argument to quote you is, it was just too much, and that was made to the district court, and the district court answered that by saying, this is a case that will largely boil down to whom the jury believes, a federal officer or an incarcerated felon. And given that, the uncharged sexual abuse is more probative than cumulative. What's wrong with that? Well, the problem is, is that if you're going to believe the officer, you're going to believe the guard, one, the officer, you know, in terms of testimony, if you're going to do that, then you don't add all of the Christina acts and all of the other uncharged acts, which allows for there to be an unfair assessment of who do you believe? Because the uncharged acts couldn't be countered, one, because they were laid in one hand, and the other, because they're not being decided under beyond a reasonable doubt standard. Well, one of the factors is the frequency of the prior acts, which would seem to indicate to me that if there are a lot of them, that argues for admission under 413. So, I understand what the court's saying, but it seems to be wrong. I don't know. I say, if you only have a few uncharged acts, they don't come in. But if you have a lot, they do come in. I'm just quoting them. I understand. And I understand it's this court's case, but nevertheless, it seems to me that it can't just be that. It can't just be that if there's a lot of them, they come in. There has to be a discernment about where does it go too far. If they needed those uncharged acts to explain counts one through five, to fulfill that story, to give it breadth, to give it depth, to give it formation, sure, they should have come in, but they are totally different. I do think we made some argument with respect to similarity, Your Honor, but the clear was more than is the thrust of it. But it's that kind of situation that you're in. This is too much, shouldn't have been admitted, not the same kind of thing. The relationship with Anna, whatever you want to call it, was real. That's why I don't think the two acts of oral sex are as egregious as the acts that are committed against Christina. I'm not trying to... Thank you. Thank you very much. Mr. Thompson, Ms. Volker, appreciate the oral argument presentations here today. The case of United States of America versus John Russell Bell House is submitted.
judges: MURGUIA, THOMAS, MILLER